IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 27 2006

LUTHER D. THOMAS, Clerk
By: Deputy Clerk

AMERICAN INSURANCE MANAGEMENT GROUP, INC., AMERICAN INSURANCE MANAGERS, INC., ATLANTA INSURANCE MARKETING, INC. and DAVID DENNETT-SMITH,

Plaintiffs,

v.

AMERICAN NATIONAL INSURANCE COMPANY, STEVEN H. SCHOUWEILER, ADRIAN C. HART, THE GEMINI TRUST, THE TAURUS SETTLEMENT, SARA VALENTINE-PARKS, GURI BEN-HASHAL, AUDITS, REVIEWS & SOLUTION

Defendants.

CIVIL ACTION NO.

1:05-CV-0352-JEC

**ORDER & OPINION**

This case is presently before the Court on Plaintiffs' Motion to Remand and Supporting Brief [9]; The Gemini Trust, The Taurus Settlement, and Mitrestone, Ltd.'s Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction and for Failure to State a Claim for Which Relief May Be Granted [20]; The Hart Partnership's Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction [21]; Motion to Drop Defendants Sara Valentine-Parks, Guri Ben-Hashal, and Audits, Reviews, and Solutions, LLC as

Improperly Joined [43]; Motion of Defendants American National Insurance Company and Steven H. Schouweiler to Drop Sham Defendants [45]; Motion to Dismiss Without Prejudice [53]; Joint Motion of Parties to Stay Time for Compliance with Deadlines [68]; AND Motion of Stephen F. Clarke, Adrian C. Hart, The Hart Partnership, The Gemini Trust, The Taurus Settlement an Mitrestone, Ltd. to Drop Stephen F. Clarke as a Party Defendant [90].

The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Plaintiffs' Motion to Remand and Supporting Brief [9] should be **DENIED;** The Gemini Trust, The Taurus Settlement, and Mitrestone, Ltd.'s Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction and for Failure to State a Claim for Which Relief May Be Granted [20] should be **DENIED;** The Hart Partnership's Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction [21] should be **DENIED as moot;** Motion to Drop Defendants Sara Valentine-Parks, Guri Ben-Hashal, and Audits, Reviews, and Solutions, LLC as Improperly Joined [43] should be **GRANTED;** Motion of Defendants American National Insurance Company and Steven H. Schouweiler to Drop Sham Defendants [45] should be **GRANTED;** Motion to Dismiss Without Prejudice [53] should be **DENIED as moot;** Joint Motion of Parties to Stay Time for Compliance with Deadlines [68] should be **DENIED as**

**moot**; AND Motion of Stephen F. Clarke, Adrian C. Hart, The Hart Partnership, The Gemini Trust, The Taurus Settlement an Mitrestone, Ltd. to Drop Stephen F. Clarke as a Party Defendant [90] should be **DENIED as moot**.

**BACKGROUND**

This case arises out of a struggle for control of plaintiff corporation American Insurance Management Group, Inc. ("AIM Group") and its subsidiaries, plaintiff American Insurance Managers, Inc. ("AIM") and plaintiff Atlanta Insurance Marketing, Inc. ("Atlanta Insurance"). (The Gemini Trust, etc. Mot. to Dismiss Pls.' Compl. for Lack of Personal Jurisdiction and for Failure to State a Claim for Which Relief May Be Granted ("Gemini Dismiss") [20] at 2.) On or about April 23, 2001, plaintiff David Dennett-Smith commenced an action against AIM Group, Donald Holland, defendant Adrian Hart, and their then attorneys in the Superior Court of Cobb County, Georgia alleging, among other things, fraud and conversion. (Pls.' Resp. to Mot. to Dismiss Filed by Defs. Gemini Trust, Taurus Settlement ("Resp. Gemini Dismiss") [54] at 2-3.)

The Cobb County litigation was eventually resolved with a Settlement Agreement signed by Dennett-Smith, AIM Group, Hart, and Holland. (*Id.* at 3.)[1] The Settlement Agreement was also signed by a

[1] Though the Settlement Agreement purports to be effective as of February 1, 2002, the parties to the agreement signed off on it



AO 72A
(Rev.8/82)

non-party to the Cobb County Action who is a defendant in this action: Mitrestone, Ltd. ("Mitrestone"). Mitrestone is the trustee of both defendant The Gemini Trust ("Gemini") and defendant The Taurus Settlement ("Taurus"). (*Id.* at 2-3.) Gemini and Taurus are trusts established under the laws of Great Britain by defendant Hart for the benefit of his children. Gemini and Taurus held 4.5% and 5.1% of the shares in AIM Group, and part of the Settlement Agreement required that all shares of AIM Group stock be transferred by the defendants in the Cobb Action to Dennett-Smith. Therefore, Mitrestone signed the Settlement Agreement on behalf of Gemini and Taurus to insure the enforceability of the stock transfer provision of the settlement. (*Id.* at 3, 5.)

Unfortunately, the 2002 Settlement Agreement did not completely resolve the parties' disputes over the AIM Group. On January 3, 2005, AIM Group, AIM, and Dennett-Smith filed a 318-paragraph Complaint commencing the present action in the Superior Court of Fulton County, Georgia. Plaintiffs allege that defendants Holland, Hart, Mitrestone, Gemini, and Taurus falsely represented and warrantied in the Settlement Agreement that none of AIM Group's business records had been destroyed, disposed of, transferred, delivered, conveyed, aliened, or encumbered when, in fact,

---

between March and April of 2002.



AO 72A
(Rev.8/82)

substantially all of AIM Group's business records were missing from the corporate offices. (Compl. at ¶¶ 236, 239; *see also* Settlement Agreement attach. as Ex. 1 to Compl. ("Settlement Agreement").) Plaintiffs assert five separate grounds for relief, including Counts One and Two under Georgia's RICO statute, Count Three for fraud and deceit, Count Four for trespass, and Count Five for breach of contract. On February 4, 2005, the present action was removed to the United States District Court for the Northern District of Georgia and is now before this Court. ("Notice of Removal to the United States District Court [1] ("Removal") at 1.)

## DISCUSSION

### I. Pending Motions Rendered Moot by Previous Court Order

The Court **DENIES as moot** The Hart Partnership's Motion to Dismiss plaintiffs' Complaint for Lack of Personal Jurisdiction [21]. By Order of the Court dated April 27, 2005, The Hart Partnership was dismissed without prejudice from this case. (Order [60] at 2; Order [72] at 2.) The Court also **DENIES as moot** AIM Group's Motion to Dismiss Without Prejudice [53] defendants Mitrestone and The Hart Partnership. By Order of the Court dated April 27, 2005, Mitrestone and The Hart Partnership were dismissed without prejudice from this case. (Order [59] at 2; Order [60] at 2; Order [71] at 2; Order [72] at 2.) The Court further **DENIES as moot** the Joint Motion of Parties to Stay Time for Compliance with Deadlines [68]. The Court addressed



AO 72A
(Rev.8/82)

by Order dated May 20, 2005, the issues presented in this motion. (Order [68].) Finally, the Court **DENIES as moot** the Motion of Stephen F. Clarke, Adrian C. Hart, The Hart Partnership, The Gemini Trust, The Taurus Settlement an Mitrestone, Ltd. to Drop Stephen F. Clarke as a Party Defendant [90]. By Order of the Court dated April 27, 2005, Stephen F. Clarke was dismissed without prejudice from this case. (Order [58] at 2; Order [70] at 2.)

**II. Personal Jurisdiction Over Gemini and Taurus**

Under Rule 12(b) of the Federal Rules of Civil Procedure, defendants Mitrestone, Gemini, and Taurus move this Court to dismiss plaintiffs' Complaint against them for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. (Gemini Dismiss at 2.) Of course, as to Mitrestone, this motion was rendered moot by the Court's April 27, 2005 Order dismissing Mitrestone as a defendant to this action.

In order for the Court to exercise its authority over any defendant, including Gemini and Taurus, the Court must have valid personal jurisdiction. The limits of the Court's personal jurisdiction are defined by two sources: state statute and the Due Process Clause of the United States Constitution. "A federal court has personal jurisdiction over a nonresident defendant to the extent permitted by the forum state's long-arm statute." *Barton Southern Co., Inc. v. Manhole Barrier Sys., Inc.*, 318 F. Supp. 2d 1174, 1176



AO 72A
(Rev.8/82)

(N.D. Ga. 2004)(Hunt, J.).

Georgia's long-arm statute provides for the exercise of jurisdiction over a non-resident only when that non-resident: (1) transacts any business within the state; (2) commits a tortious act or omission within the state "insofar as the exercise of that personal jurisdiction comports with constitutional due process;" (3) commits a tortious injury in the state caused by an act or omission outside the state if the tortfeasor regularly does or solicits business or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state, "notwithstanding that these limiting conditions may preclude a Georgia court from exercising personal jurisdiction over the nonresident to the fullest extent permitted by constitutional due process;" or (4) owns, uses, or possesses any real property situated within the state. O.C.G.A. § 9-10-91 (2005)(setting out the elements of Georgia's long-arm statute); *Innovative Clinical and Consulting Servs., LLC v. First Nat'l Bank of Ames*, 279 Ga. 672, 674, 620 S.E.2d 352, 354 (2005)(expressing frustration at the Eleventh Circuit and other federal courts' repeated, but incorrect, declaration that Georgia's long arm statute confers personal jurisdiction to the maximum extent allowed by the due process clause of the U.S. Constitution)(portions of the above text that are in direct quotations are from *Innovative*).



AO 72A
(Rev.8/82)

Neither Gemini nor Taurus own or possess any real property in Georgia. In addition, neither has been sued in tort. Thus, only the first prong of Georgia's long-arm statute--transacts any business within this state--is applicable in this case. "Jurisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction . . . does not offend traditional fairness and substantial justice." *Robertson v. CRI, Inc.*, 267 Ga. App. 757, 759, 601 S.E.2d 163, 166 (2004).

In support of their argument that they are not subject to personal jurisdiction in Georgia, Gemini and Taurus indicate that they negotiated the Settlement Agreement at issue in this case via phone, mail, facsimile, and Internet, eventually executing the Settlement Agreement on the Isle of Man. (Gemini Dismiss at 9-10.) Gemini and Taurus argue that contacts such as these do not amount to transacting business in Georgia. (*Id.* at 10.) Gemini and Taurus further argue that their attendance at two AIM Group shareholders meetings in Georgia is irrelevant because these shareholders meetings did not give rise to or are not otherwise related to the breach of contract action alleged in plaintiffs' Complaint. (*Id.* at 11.) As to the constitutionality of this Court exercising personal jurisdiction

over Gemini and Taurus, the trusts maintain that they do not have the kind of "continuous and systematic" contact with Georgia necessary to support the kind of general personal jurisdiction that would allow the Court to exercise jurisdiction over matters unrelated to the defendants' contacts with the forum. Gemini and Taurus further argue that they are not subject to specific jurisdiction because they have insufficient contacts with Georgia that relate to the cause of action. (*Id.* at 12.) Gemini and Taurus maintain that owning stock in a Georgia corporation, attending two shareholders meetings in Georgia, and entering into a Settlement Agreement with Dennett-Smith (a citizen of the United Kingdom residing in Georgia) were not substantial enough contacts to have put Gemini and Taurus on notice that they could be hauled into a Georgia courtroom. (*Id.* at 11-12.)

In response to all of this, plaintiffs rely on the "choice of forum" provision included as part of the Settlement Agreement to argue that Gemini and Taurus have consented in advance to the jurisdiction of a Georgia court and thereby waived any objection to personal jurisdiction. This provision provides:

> All disputes arising under this Agreement will be adjudicated and decided in the courts of Fulton County, Georgia. The Plaintiff and Defendants agree that they shall each be subject to personal jurisdiction in the courts of Fulton County, Georgia in any proceeding brought to enforce this Agreement.

([54]Resp. Gemini Dismiss at 8 (emphasis added). In short, quoting

the language of the above provision, plaintiffs contend that all disputes arising under the settlement agreement were to be adjudicated in the courts of Fulton County, Georgia. Further, this provision indicated that the "defendants" agreed to personal jurisdiction in the courts of Fulton County.

In Georgia, a party may consent in advance to the jurisdiction of a court that would otherwise lack personal jurisdiction. *See* O.C.G.A. § 15-1-2 (2005). In other words, a party may waive the absence of personal jurisdiction. Gemini and Taurus acknowledge as much, but contend that they were not parties to the "choice of forum" provision, albeit they signed the Settlement Agreement containing this provision. (Reply Br. in Supp. of The Gemini Trust and The Taurus Settlement's Mot. to Dismiss, etc. ("Gemini Reply") [76] at 1-2.) Gemini and Taurus base this argument on the fact that the sentence in the provision referring to personal jurisdiction uses the term "defendants" and Gemini and Taurus argue that they were not defendants, as that term is used in the Settlement Agreement.

In truth, Gemini and Taurus were not defendants in the Cobb County action that gave rise to the Settlement Agreement that ultimately gave rise to the present action. Nevertheless, they did participate in the settlement process and, through their agent, signed the settlement agreement. Their participation and assent were apparently necessary because a part of the settlement agreement

provided that they would turn over the designated stock certificates that they held to the plaintiff in the Cobb action. Moreover, plaintiffs note that the "definition" section of the Settlement Agreement includes Gemini and Taurus as "defendants" for purposes of the agreement. Specifically, the term "defendants" is defined to mean "AIM Group, Holland, and Hart." (Settlement Agreement at 1.) In turn, "AIM Group" is defined to mean, "American Insurance Management Group, Inc., and its parent and subsidiary corporations, shareholders . . ." (*Id.*)(emphasis added). Because Gemini and Taurus were both shareholders of AIM Group, plaintiffs maintain that they were "defendants" and that the agreement to submit to jurisdiction in Georgia, contained in the "choice of forum" provision, applies to Gemini and Taurus. (Resp. Gemini Dismiss at 8.)

In reply, Gemini and Taurus urge the Court not to read the "definition" section of the Settlement Agreement literally, but instead to focus on the fact that the Settlement Agreement consistently uses the term "defendants" in a fashion that excludes the trusts and explicitly refers to both the "defendants" and the "Trusts," thereby suggesting that the Trusts are not included as defendants. (Gemini Reply at 2-3.) Specifically, Gemini and Taurus argue that an effort to probe the context of various provisions reveals that the Settlement Agreement uses the term "defendants" when referring to Hart, Holland, and the AIM Group, while it used the term

"defendants, the trusts, and the trustee" when referring to Hart, Holland, the AIM Group, and Gemini and Taurus. (*Id.* at 3.)

The construction of a contract is a matter of law for the Court to decide. O.C.G.A. § 13-2-1 (2005). In essence, Gemini and Taurus admit that, read literally, the agreement indicates that they should be considered to be defendants. Nevertheless, Gemini and Taurus urge the Court to eschew literalism and look to the fact that the Settlement Agreement consistently refers to both "defendants" and "the Trusts," thereby suggesting that the definitional section should be ignored. Courts are understandably reluctant to ignore clear provisions in an agreement in order to arrive at what appears to be a better provision, because to do so could be deemed as rewriting the contract. Georgia law specifically provides that, "in construing a contract . . . where the language of a contract is plain and unambiguous, no construction is required or permissible and the terms of the contract must be given an interpretation of ordinary significance." Indeed, "the trial court . . . is [not] at liberty to rewrite or revise a contract under the guise of construing it." *Rabun & Assocs. Const., Inc. v. Berry*, 276 Ga.App. 485, 487, 623 S.E.2d 691, 694 (2005)(internal citations and quotations omitted).

Here, the definitional section clearly indicates that the Trusts--Gemini and Taurus--should be considered to be defendants. Moreover, even if the Court were tempted to follow Gemini and



AO 72A
(Rev.8/82)

Taurus's argument that the Court should ignore the definitional section, there is another sentence in the Choice of Forum provision that makes no reference to the term "defendants." Specifically, the first sentence in the provision states that "[a]ll disputes arising under this Agreement will be adjudicated and decided in the courts of Fulton County, Georgia." (emphasis added). This sentence does not differentiate between a defendant or a trust or focus on any party at all. Instead, "all disputes" means just what it says: all disputes, no matter which signatory is involved in the particular dispute. Indeed, Gemini and Taurus's contention would lead to an absurd and awkward procedural result, potentially requiring dual litigation for the same dispute in Fulton County, Georgia, as to the other defendants, and in England, as to Gemini and Taurus. That is not likely the result intended by any signatory to the agreement.

As Gemini and Taurus make the same argument in support of their motion to dismiss for failure to state a claim for relief,[2] the Court denies that motion as well. For the above reasons, the Court **DENIES** The Gemini Trust, The Taurus Settlement, and Mitrestone, Ltd.'s

---

[2] It is not clear that the Trusts had any control over certain acts committed by other defendants and complained about by plaintiffs in this litigation. The Court will leave, for another day, a determination whether the Trusts can be held to some of the warranties made by other defendants, based merely on the Trusts' inclusion as a defendant in the definitional section of the Agreement.



AO 72A
(Rev.8/82)

Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction and for Failure to State a Claim for Which Relief May Be Granted [20].

**III. Motions to Drop the ARS Defendants**

Defendants Valentine-Parks, Ben-Hashal, and the "ARS defendants" have filed a Motion to Drop Defendants Sara Valentine-Parks, Guri Ben-Hashal, and Audits, Reviews, and Solutions, LLC as Improperly Joined [43]. Defendants American National Insurance Company and Steven H. Schouweiler have filed a Motion to Drop Sham Defendants [45]. The defendants sought to be dropped in this latter motion are defendants Valentine-Parks, Ben-Hashal, and the ARS defendants. Thus, the two motions seek to accomplish the same thing: to drop, as fraudulently joined, defendants Valentine-Parks, Ben-Hashal, and the ARS defendants. Importantly, defendants Ragsdale and Clarke having already been dismissed from the case, the ARS defendants are the only remaining non-diverse defendants.

As "[a] defendant's right of removal cannot be defeated by a fraudulent joinder of a resident defendant who has no real connection with the case," the Court must decide the motions to drop the ARS defendants before it can decide plaintiffs' pending motion to remand this case to state court on the basis of a lack of diversity-based subject matter jurisdiction. *Crooke v. R.J. Reynolds Tobacco Co.*, 978 F. Supp. 1482, 1484 (1997) (Thrash, J.). Because the arguments



AO 72A
(Rev.8/82)

made in both of the pending motions to drop the ARS defendants are similar and both motions ask the Court to do the same thing, the Court will consider the two motions together. Plaintiffs have taken the same approach in submitting a single, comprehensive response to both pending motions.

**A. Arguments For and Against Dropping the ARS Defendants**

In support of the pending motions to drop, defendant American National Insurance Company ("Am. National") and the ARS defendants argue that plaintiffs' Complaint does not allege any facts that could possibly support the Georgia RICO claims that plaintiffs have brought against the ARS defendants. (Mem. of Defs. Am. Nat'l Ins. Co. and Steven H. Schouweiler in Supp. of their Mot. to Drop Sham Defs. ("Am. Nat'l Drop") [45] at 12; Br. of Defs. Sara Valentine-Parks, etc. in Opp'n to Pl.'s Mot. to Remand, and in Supp. of Mot. to Drop these Defs. ("ARS Defs. Drop") [42] at 3.) More specifically, Am. National and the ARS defendants argue that plaintiffs' Complaint does not allege facts sufficient to support any of the RICO predicate acts that plaintiffs allege the ARS defendants to have committed. (Am. Nat'l Drop at 18; ARS Defs. Drop at 3.)

According to Am. National and the ARS defendants, plaintiffs allege that the ARS defendants committed the predicate acts of theft by taking, O.C.G.A. § 16-8-2; theft by deception, O.C.G.A. § 16-8-3; theft by conversion, O.C.G.A. § 16-8-4; false statements, O.C.G.A. §



AO 72A
(Rev.8/82)

16-10-20; perjury, O.C.G.A. § 16-10-70; federal mail fraud, O.C.G.A. § 18 U.S.C. § 1341; and federal wire fraud, O.C.G.A. 18 U.S.C. § 1343. (Am. Nat'l Drop at 19.) In both of their motions, Am. National and the ARS defendants separately address each of these predicate acts in contending that plaintiffs have failed to allege facts sufficient to show a violation. (*See* Am. Nat'l Drop at 20-26; ARS Defs. Drop at 7-23.) Additionally, the ARS defendants argue that plaintiffs cannot show a causal connection between any actions of the ARS defendants and the injuries plaintiffs have allegedly sustained. (ARS Defs. Drop at 6.)

In response, plaintiffs state that they are seeking to recover damages against the ARS defendants for their participation in a RICO conspiracy, not just for the commission of RICO predicate acts in furtherance of a pattern of racketeering activity. (Pls.' Corrected Resp. in Opp'n to Defs. to Mot. to Drop "Sham" Defs. and Reply to Defs.' Resp. to Mot. to Remand ("Resp. Drop") [75] at 8-9.) Plaintiffs then note that when alleging a RICO conspiracy, it is not necessary to prove that a RICO co-conspirator committed even one predicate act. (*Id.* at 9.) Instead, plaintiffs argue that they have alleged facts in their Complaint sufficient to establish all that they must show: namely, that the ARS defendants were involved in a RICO conspiracy and that plaintiffs' injuries were proximately caused by a predicate act committed by one of the co-conspirators in



AO 72A
(Rev.8/82)

furtherance of that conspiracy. (*Id.* at 10-15.) In sum, plaintiffs indicate that their Complaint states valid claims against the ARS defendants for conspiring and endeavoring to violate Georgia RICO [Counts 1 and 2], for conspiracy to commit fraud [Count 3], and for trespass to personal property [Count 4]. (*Id.* at 27.) Finally, plaintiffs maintain that the question of whether a conspiracy existed in which the ARS defendants were participants is exclusively one for a jury. (*Id.* at 14.)

**A. Standard on a Motion to Drop Party for Fraudulent Joinder**

In this circuit, "[t]he removing party bears the burden of proving that the joinder of the resident defendant was fraudulent." *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989)(internal citation omitted). "The joinder is fraudulent if it is clear that, under the law of the state in which the action is brought, the facts asserted by the plaintiff as the basis for the liability of the resident defendant could not possibly create such liability so that the assertion of the cause of action is as a matter of local law plainly a sham and frivolous." *Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962).[3] To determine whether a defendant has been fraudulently joined, the Court employs a two-part

[3] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).



AO 72A
(Rev.8/82)

test asking (1) "whether there is no possibility the plaintiff can establish any cause of action against the resident defendant;" and (2) "whether plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court." *Cabalceta*, 883 F.2d at 1561 (internal citation omitted). The Court is therefore left to consider whether there is any possibility that plaintiffs can establish a cause of action against the ARS defendants. The Court must decide this issue based upon the plaintiffs' pleadings at the time of removal, resolving all questions of fact and controlling law in favor of the plaintiff. *Id.* In addition to the pleadings, the Court may also consider any affidavits or deposition transcripts submitted by the parties. *Id.*

**B. Were the ARS Defendants part of a conspiracy?**

The "Georgia RICO (Racketeer Influenced and Corrupt Organizations) Act" makes it unlawful "for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." O.C.G.A. § 16-14-4(a) (2005). The act also makes it unlawful "for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity." O.C.G.A. § 16-14-4(b) (2005). Finally, Georgia's RICO statute makes it unlawful



AO 72A
(Rev.8/82)

"for any person to conspire or endeavor to violate" any of the above. *See* O.C.G.A. § 16-14-4(c) (2005).

Plaintiffs rely on the above criminal statute in bringing their civil RICO suit. Plaintiffs do not allege that the ARS defendants actually violated O.C.G.A. § 16-14-4 (a) or (b), which articulates a substantive RICO violation. Instead, plaintiffs allege that the ARS defendants *conspired* to violate O.C.G.A. § 16-14-4 subsection (a) and (b), in violation of O.C.G.A. § 16-14-4(c), which sets out a RICO conspiracy violation. (Resp. Drop at 10, 27.)

The parties focus their attention on the issue of whether plaintiff has alleged facts sufficient to establish any of the Georgia RICO predicate acts that plaintiffs allege the ARS defendants to have violated. They do so because, "[t]he cause of action for civil conspiracy lies not in the conspiracy itself, but in the underlying tort committed against the plaintiff and the resulting damage." *Perimeter Realty v. GAPI, Inc.*, 243 Ga. App. 584, 591, 533 S.E.2d 136, 144 (2000)(internal citation omitted). Nevertheless, in a RICO civil conspiracy claim like the one presented here, the Court's first real inquiry should be whether or not there is a sufficient allegation that there was any conspiracy of which the ARS defendants were a part. Indeed, if the ARS defendants were not a party to at least some conspiracy, then they could not possibly have violated O.C.G.A. § 16-14-4(c) by *conspiring* to violate O.C.G.A. §



AO 72A
(Rev.8/82)

16-14-4(a) or (b).

"'A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means.'" *Perimeter Realty*, 243 Ga. App. at 591, 533 S.E.2d at 144. In Georgia, the question of conspiracy is often "solely" for the jury. *Hodges v. Youmans*, 129 Ga. App. 481, 482, 200 S.E.2d 157, 159 (1973). However, "the mere fact that conspiracy has been alleged does not require submission of the question to the jury." *Lewis v. Rickenbaker*, 174 Ga. App. 371, 373, 330 S.E.2d 140, 144-45 (1985). Instead, for the question of conspiracy to become "solely a question for the jury," plaintiffs in this case must "allege[] facts and circumstances which suggest a conspiracy or which 'establish an inference, as a deduction from conduct which discloses a common design.'" *Id.*

"The elements of a conspiracy are: (a) The confederating: The combining together of two or more persons. (b) The intent: For the purpose. (c) The object: Of doing something unlawful or oppressive, or immoral, as a means of an end." *Woodruff v. Hughes,* 2 Ga. App. 361, 361, 58 S.E. 551, 553 (1907)(internal citation and quotation omitted). While a conspiracy may be proved by either direct or circumstantial evidence, to establish a viable RICO conspiracy case, plaintiffs must allege that the "conspirators agreed to participate directly or indirectly in the affairs of an enterprise through a



AO 72A
(Rev.8/82)

pattern of racketeering activity . . . The requisite agreement may be inferred from the conduct of the participants." *In re Managed Care Litigation*, 150 F. Supp. 2d 1330, 1349-50 (S.D. Fla. 2001)(quoting *United States v. Castro*, 89 F.3d 1443, 1451 (11th Cir. 1996).[4] For a claim of conspiracy to go forward, there must be "evidence of record which would authorize a finding that the [ARS defendants] either positively or tacitly came to a mutual understanding to accomplish an unlawful design." *Lewis*, 174 Ga. App. at 373, 330 S.E.2d at 144. "[T]he inference [from the evidence] of the conspiracy must be reasonable, probable, and unstrained . . . The law should not, and does not, authorize a finding that a conspiracy exists merely because of some speculative suspicion . . ." *Grant v. Hart*, 197 Ga. 662, 679-80, 30 S.E.2d 271, 282 (1944). Thus, the question becomes whether the plaintiffs have sufficiently alleged that Valentine-Parks, Ben-Hashal, and ARS joined together with the defendants in performing acts for an unlawful purpose.

Valentine-Parks and Ben-Hashal became defendants in this case because they are the members of defendant ARS. ARS is a small, privately-held business that provides claim-handling and auditing

---

[4] For some time, Georgia courts have recognized, "[a]lthough they do not control construction or application of the state RICO statute, federal circuit court opinions regarding the federal [RICO] statute are instructive." *Dover v. State*, 192 Ga. App. 429, 431, 385 S.E.2d 417, 420 (1989).



AO 72A
(Rev.8/82)

services for insurers and reinsurers. (Am. Nat'l Drop at 15.) Among other things, plaintiff AIM Group was engaged in the management of medical stop loss insurance claims in a program underwritten for two years by defendant American National Insurance Company ("ANICO"). (*Id.* at 2-3.) Evidently, at some point during AIM Group's financial collapse, AIM Group and ANICO decided that ANICO would employ an entity called IOA Re to administer the outstanding medical stop loss business for which ANICO was the insurer at risk. (Am. Nat'l Drop at 4; Compl. at ¶¶ 120-123.) This ANICO business ultimately went to an IOA Re subsidiary entity known as IR&AS and Auditing Services ("IR&AS"). (Am. Nat'l Drop at 4, 15.) In turn, IR&AS hired ARS as a subcontractor to perform claim services. (*Id.* at 15.) This is how the ARS defendants became embroiled in the present controversy.

To determine whether, based on plaintiffs' pleadings at the time of removal, there is any possibility that plaintiffs can establish any cause of action against the Georgia resident ARS defendants, the Court has reviewed plaintiffs' Complaint in its entirety. All told, in plaintiffs' 84-page, 318-paragraph Complaint, the ARS defendants are mentioned by name in less than twelve paragraphs.

One of those paragraphs, #74, is a conclusory declaration that the ARS defendants "combined, conspired, and endeavored . . . to defraud AIM Group, AIM, Atlanta Insurance, and Dennett-Smith, and to take, obtain, and appropriate the Plaintiffs' property by false



AO 72A
(Rev.8/82)

representations, false promises, false pretenses, theft, trespass, and other acts of misappropriation." (Compl. at ¶ 74.) This paragraph does not set forth any facts or provide any hint as to what the ARS defendants actually did.

Only three of the twelve paragraphs discuss any acts in which the ARS defendants allegedly engaged. The first of these paragraphs, #228, provides:

> On or about January 25, 2002, Holland and Schouweiler participated in an interstate telephone communication in which Schouweiler directed Holland and AIM Group to permit IR&AS and ARS, Valentine-Parks, and Ben-Hashal to remove all ANICO claim and other files from AIM Group offices and maintain them on behalf of ANICO.

(*Id.* at ¶ 228.) Nothing in this paragraph suggests that Valentine-Parks or Ben-Hashal did anything wrong by following such a direction or that their compliance was done in an effort to achieve an unlawful purpose.

The second of these paragraphs, #230, provides:

> On or about January 29, 2002, business records of AIM Group, including, but not limited to underwriting, claims, accounting and case records, maintained at he offices of AIM Group . . . were boxed up and removed from the offices at the direction of Holland, Hart, Schouweiler and ANICO. Employees of Sunrise Movers appeared at the offices of AIM Group and removed the boxed records to an unknown location. Present on this occasion were Holland, Valentine-Parks (ARS), Ben Hashal (ARS), Sterlon Mayo (ANICO), and Vanessa Metzmeier (IOA Re).

(*Id.* at ¶ 230.) Again, this paragraph alleges no *actus reus* or *mens rea* by the defendants in question. In criminal lingo, the paragraph



AO 72A
(Rev.8/82)

alleges only that they were "merely present" when something that plaintiffs find objectionable happened. It is hornbook criminal law that evidence of mere presence is insufficient to prove a conspiracy.

The last of these paragraphs, #244, provides:

> In April 2002, AIM Group was named as a defendant in a number of lawsuits around the country because claims were not being processed. Defendants Schouweiler, ANICO, Valentine-Parks, Ben Hashal, and ARS prevented AIM Group from processing claims by taking possession of and withholding ANICO insurance records from AIM Group, and thereby subjected AIM Group to potential liability and actual expense of defending litigation.

(*Id.* at ¶ 244.) This paragraph at least suggests some action by these defendants, but again there is no allegation that these defendants acted with any criminal intent.

By affidavit testimony,[5] Valentine-Parks[6] states that on January 28, 2002, she was told by ANICO that AIM had been notified that ARS March 27, 2006 was authorized to remove ANICO files from AIM's office the next day for the purpose of inventorying those files. (Aff. of Sara Valentine-Parks ("VP Aff.") at ¶ 18.) Valentine-Parks understood these files to be the joint property of AIM and ANICO, and states that she was present on January 29, 2002, when several hundred boxes of files were taken from AIM's office to ARS' office in

---

[5] Plaintiffs have not submitted any affidavits in support of their opposition to the pending motions to drop the ARS defendants.

[6] Ben-Hashal's affidavit reiterates facts virtually identical to those set out in the affidavit of Valentine-Parks. (*See* Aff. of Guri Ben-Hashal ("BH Aff.") [44].)



AO 72A
(Rev.8/82)

Marietta. (*Id.* at ¶¶ 9, 19.) Valentine-Parks testifies that representatives of both AIM and ANICO were present at the time the boxes were being removed, and no one raised any issue at that time about ARS' authority to remove the files. (*Id.* at ¶ 20.)

In mid-March 2002, Valentine-Parks states that she received a telephone call from Dennett-Smith in which he said that he had returned to AIM's office to find that files and several computers were missing. Valentine-Parks says she told Dennett-Smith that she did not have any computers from AIM's office, but that she did have a large number of files from the office which she would turn over to Dennett-Smith if authorized to do so either by defendant in this action, ANICO, or by another entity known as Conseco. (*Id.* at ¶ 23.) Later in March 2002, according to Ben-Hashal's affidavit, Dennett-Smith called Ben-Hashal to say that ARS was illegally in possession of the files that had been removed from AIM's office. Ben-Hashal says he asked Dennett-Smith to put any request to ARS in writing, and to specify the capacity in which he was making the request and that ARS would then respond. (BH Aff. at ¶ 19.)

Valentine-Parks states in her affidavit that, after this communication between Ben-Hashal and Dennett-Smith, she notified defendant Steven Schouweiler of ANICO about Dennett-Smith's complaints and was told by Schouweiler that he did not know why Dennett-Smith was contacting ARS about the files, instead of calling

him. Valentine-Parks states that Schouweiler instructed her to tell Dennett-Smith he should direct any further inquiries about the files to Schouweiler. (VP Aff. at ¶ 24.) On May 9, 2002, ARS received a faxed letter from an attorney representing Dennett-Smith demanding that ARS turn over a variety of files and materials in its possession, pertaining to a number of insurers not including ANICO or Conseco. (*Id.* at ¶ 25.) On May 17, 2002, ARS responded by sending to AIM any items found in the files that did not pertain to ANICO or Conseco policies. At the same time, ARS indicated by letter that it was holding the ANICO and Conseco files at the request of those carriers and that any requests for ANICO or Conseco files would need to be addressed to those carriers. (*Id.* at Ex. Q.) ARS provided the names and addresses of the persons who Dennett-Smith would need to contact at ANICO and Conseco in its response letter. (*Id.* at ¶¶ 27-29.)

Other than a mid-May 2002 request for a specific claim file, which Valentine-Parks states that she photocopied and sent off as requested, Valentine-Parks states that she did not receive any communication from plaintiff requesting additional claim files or complaining that any action by Valentine-Parks, Ben-Hashal, or ARS had any effect on AIM's ability to conduct its business or to defend itself from any lawsuit. (*Id.* at ¶ 32.) Valentine-Parks indicates in her affidavit that the transfer of files to ARS was done for

practical reasons only because the AIM office was being closed--the office had no power, no computer system, and no employees--and the files had to go somewhere in order that AIM and other insurers could continue to service claims, which were being processed by ARS, as they were required to do. (*Id.* at ¶ 38.) For more than two and a half years after the May 2002 file request, ARS received no communication from Dennett-Smith or anyone representing him. ARS, Valentine-Parks, and Ben-Hashal were then served with the Complaint in this action. (*Id.* at ¶ 33.)

As noted *supra*, plaintiffs have set out no facts in the Complaint that would allow an inference that these facts could possibly serve as the basis for liability by the defendants in question. Moreover, taking all this proffered evidence together, and viewing it in the light most favorable to plaintiffs, there are no facts alleged that would indicate that the ARS defendants were willing participants in any kind of conspiracy. *See O'Malley v. O'Neill*, 887 F.2d 1557 (11th Cir. 1989). The fact that ANICO told the ARS defendants to remove ANICO files from AIM Group's office and maintain them for ANICO does not create an inference that any of the ARS defendants came together with any other entity for the purpose of accomplishing an unlawful end, particularly inasmuch as the ARS defendants were present when those files were removed. Plaintiffs' conclusory declaration that the ARS defendants combined, conspired,



AO 72A
(Rev.8/82)

and endeavored to defraud plaintiffs and to take, obtain, and appropriate the plaintiffs' property by false representations, false promises, false pretenses, theft, trespass, and other acts of misappropriation is just that: a bald declaration without factual support that does not set forth facts sufficient to create an inference that there was a "mutual understanding to accomplish an unlawful design."

Moreover, plaintiffs have provided no affidavits to flesh out their conclusory averments in the Complaint that offer any evidence that the ARS defendants conspired with any other defendant or non-defendant to accomplish anything, let alone an unlawful end. To the contrary, the evidence before the Court is that the ARS defendants understood that the files they were charged with belonged jointly to AIM and ARS. Indeed, such an understanding is consistent with the Managing General Underwriting and Agency Agreement that purports to have governed the agreement between AIM and ANICO from July 1, 1999 to June 30, 2000, but was not actually signed until after the agreement had expired. Under Article 7.1 of the Agreement, all of the records from AIM and ANICO's venture were declared the joint property of AIM and ANICO. (*See* Compl. at ¶ 84.)

The proffered evidence before the Court indicates that the ARS defendants waited until ANICO notified them that AIM had been informed that the ARS defendants were authorized to remove ANICO



AO 72A
(Rev.8/82)

files from AIM's office. Further, the proffer indicates that representatives of AIM stood by without protest as the files at issue were taken out of AIM's office, thereby giving the ARS defendants no indication that there was any problem with ARS taking possession of the files.

Though the facts of this case are garbled, it is nevertheless clear to this Court that plaintiffs have alleged no facts nor presented any evidence that suggests the ARS defendants conspired with anyone to engage in criminal wrongdoing. Even with the lenient standards of federal notice pleading, plaintiffs have not set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* FED. R. CIV. P. 8. The Court cannot allow a claim of conspiracy to go forward "merely because of some speculative suspicion." *See Grant*, 197 Ga. at 679-80, 30 S.E.2d at 282. Simply put, plaintiffs' "failure to connect the alleged wrongdoing to the alleged wrongdoers is fatal to their civil conspiracy claim." *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 912 (11th Cir. 1998).

Having not entered into or participated in any conspiracy, the ARS defendants certainly could not have conspired to violate Georgia's RICO statute in violation of O.C.G.A. § 16-14-4(c) (2005). Similarly, plaintiffs have pled insufficient factual allegations to establish a claim that the ARS defendants conspired to commit fraud.



AO 72A
(Rev.8/82)

However, before concluding that there is no possibility that plaintiffs can establish any cause of action against the ARS defendants, the Court must determine whether plaintiffs have set forth sufficient factual allegations to support their claim that the ARS defendants committed the tort of trespass to personal property, Count 4 of plaintiffs' Complaint.

**C. Trespass to Personal Property**

As stated above, under Article 7.1 of the Managing General Underwriting and Agency Agreement, which defined ANICO and AIM's working relationship, all of the records from AIM and ANICO's venture are the joint property of AIM and ANICO. "A trespass is any wrongful, continuing interference with a right to the *exclusive* use and benefit of a property right." *Lanier v. Burnette*, 245 Ga. App. 566, 570, 538 S.E.2d 476, 480 (2000)(emphasis added). By the plain terms of the agreement, and as evidenced by the fact that AIM officials voiced no protest as they stood by and watched the files at issue being packed out of AIM's office, ANICO had the same right to possess the files as AIM. AIM never had the right to the *exclusive* use and benefit of the files and records of AIM and ANICO's records. The ARS defendants could not possibly have interfered with a right that did not exist, and, accordingly, could not possibly be liable on a claim for trespass.

The ARS defendants have therefore met their burden of showing

that the allegations of the Complaint state no possible cause of action against them. Because there is no possibility that plaintiffs can establish a cause of action against the resident ARS defendants, the Court concludes that these three defendants have been fraudulently joined. *See Cabalceta*, 883 F.2d at 1561. Plaintiffs' real grievance is with ANICO and its representatives, and that is who this case should proceed against. Accordingly, pursuant to FED. R. CIV. P. 21,[7] the Court **GRANTS** Motion to Drop Defendants Sara Valentine-Parks, Guri Ben-Hashal, and Audits, Reviews, and Solutions, LLC as Improperly Joined [43] and **GRANTS** Motion of Defendants American National Insurance Company and Steven H. Schouweiler to Drop Sham Defendants [45]. With this decision, the Court has presumably dropped all non-diverse defendants from this action. Thus, all remaining defendants are completely diverse from all plaintiffs; that is, none of the remaining defendants are citizens of Georgia. The Court will now proceed to consider the last of the motions currently pending before it, plaintiffs' motion to remand.

## IV. Plaintiff's Motion to Remand

Plaintiffs ask that this action be remanded to the State Court

---

[7] "Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately." FED. R. CIV. P. 21.



AO 72A
(Rev.8/82)

of Fulton County, Georgia on the grounds that this case is not within the subject matter jurisdiction of this Court, and, therefore, was improperly removed. (Pls.' Mot. to Remand and Supp. Br. ("Remand") [9] at 1.) Plaintiffs' motion is based on the argument that the presence of co-defendants Valentine-Parks, Ben-Hashal, and ARS destroys the complete diversity of citizenship necessary to establish diversity jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. § 1441. (*Id.* at 3.) As the Court, *supra*, has granted defendants' motion to drop these defendants, plaintiffs now lack any basis for this motion because complete diversity exists.[8] Accordingly, defendants properly removed this action under the rules set forth in 28 U.S.C. § 1441.[9]

Having determined that is has diversity-based subject matter jurisdiction, the Court has no cause to consider the alternative argument for subject matter jurisdiction based on a federal question raised in defendants' response to plaintiffs' motion to remand. (*See* Mem. of Defs, etc. in Opp'n to Pls.' Mot. to Remand ("Opp'n Remand") [46] at 2).

---

[8] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332 (2005).

[9] " . . . any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441 (2005).



AO 72A
(Rev.8/82)

**CONCLUSION**

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion to Remand and Supporting Brief [9]; **DENIES** The Gemini Trust, The Taurus Settlement, and Mitrestone, Ltd.'s Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction and for Failure to State a Claim for Which Relief May Be Granted [20]; **DENIES as moot** The Hart Partnership's Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction [21]; **GRANTS** Motion to Drop Defendants Sara Valentine-Parks, Guri Ben-Hashal, and Audits, Reviews, and Solutions, LLC as Improperly Joined [43]; **GRANTS** Motion of Defendants American National Insurance Company and Steven H. Schouweiler to Drop Sham Defendants [45]; **DENIES as moot** Motion to Dismiss Without Prejudice [53]; **DENIES as moot** Joint Motion of Parties to Stay Time for Compliance with Deadlines [68]; AND **DENIES as moot** Motion of Stephen F. Clarke, Adrian C. Hart, The Hart Partnership, The Gemini Trust, The Taurus Settlement an Mitrestone, Ltd. to Drop Stephen F. Clarke as a Party Defendant [90].

SO ORDERED, this 27 day of March, 2006.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE



AO 72A
(Rev.8/82)